SMITH v. GARRETSON.

Opinion delivered April 2, 1928.

1. EQUITY—EXHIBITS TO COMPLAINT.—In suits in equity exhibits to the complaint will be looked to on demurrer for the purpose of testing the sufficiency of allegations of the complaint.

2. CONSTITUTIONAL LAW—RIGHT TO QUESTION VALIDITY OF STATUTE.— In a suit to restrain levying of an assessment of benefits within a levee district against plaintiff's lands, which were brought into the district under a county court's order under the same notice and procedure prescribed for creating a new levee district, plaintiff was not entitled to contend that the lands were embraced within the district without notice, and that Crawford & Moses' Dig., § 6813, was unconstitutional in providing that a change of boundary of the district should be made without notice.

3. CONSTITUTIONAL LAW—NECESSITY OF DECISION ON CONSTITUTIONAL-ITY.—As a general rule, the court will not pass on a constitutional question unless a decision on that very point is necessary to determination of the case.

4. LEVEES—ASSESSMENT OF LAND ADDED TO DISTRICT.—Crawford & Moses' Dig., § 6813, held to authorize assessment of levee district benefits against land added to an existing district by changing its boundary.

5. LEVEES—AUTHORITY TO ASSESS BENEFITS TO LANDS ADDED TO DIS-
TRICT.—The board of assessors of a levee district, if not expressly
authorized to assess the benefits to additional lands brought into
an existing district by change of boundaries, has such authority
by necessary implication under Crawford & Moses' Dig., § 6823.

6. LEVEES—INCIDENTAL POWERS OF DISTRICT.—In the construction of
statutes governing levee improvement districts, the grant of
powers by the statute includes the incidental powers reasonably
proper and necessary for carrying into execution the powers spe-
cifically granted.

Appeal from White Chancery Court; *Frank H. Dodge,* Chancellor; affirmed.

*C. E. Yingling,* for appellant.

*Brundidge & Neelly,* for appellee.

WOOD, J. On January 2, 1928, a petition was pre-
sented to the White County Court asking that the bound-
ary lines of Levee District No. 1 be changed and that
certain territory described in the petition be added to
the district "for the purpose of constructing and main-
taining a levee for the protection" of the lands described
in the petition and all the lands which had already been
included in Little Red River District No. 1. At the
regular January term of the White County Court the
court found that notice was given to the resident land-
owners in the territory described in the petition more
than ten days before the application for the change in
the boundary lines by posting written notices in three
public places in the limits of the district and the proposed
addition thereto. The court further found that an elec-
tion had been duly and regularly held for the purpose
of electing one director and assessor for the Little Red
River District No. 1, and that one George Akers was
elected director and Walter Heathcock was elected
assessor.

This action was instituted in the White Chancery
Court by L. A. Smith against T. H. Garretson, Swan
Garretson and George Akers, as directors, and Walter
Heathcock, L. A. Pryor and J. M. Garretson as assessors,
of Little Red River District No. 1. The plaintiff alleged
that he was a landowner and taxpayer of the district,

and that an order was made annexing certain territory to the district, which order is set out and made an exhibit to his complaint, and the alleged annexed territory is described in the exhibit. He further alleged that the court ordered an election, after due notice, for the purpose of electing a director and also an assessor to fill vacancies in those respective offices, and that at the election so held one George Akers was elected director and Walter Heathcock was elected assessor. He alleged that the directors and assessors were threatening to assess his lands and other lands in the district and to issue additional bonds to repair the levee, which was damaged by overflows, and that there was no provision under the law whereby the lands can be assessed and no right or authority in the assessors to assess the lands which had been annexed to Little Red River District No. 1. The plaintiff prayed that the defendants be enjoined from levying an assessment of benefits on his land.

The defendants filed a general demurrer to the complaint. The cause was submitted upon the complaint with its exhibits and the demurrer of the defendants. The court sustained the demurrer, and the plaintiff stood on his complaint and exhibits. The court entered a decree dismissing the complaint for want of equity, from which is this appeal.

1. It will be observed that the cause was heard on the demurrer to the complaint. In actions in equity exhibits to the complaint will be looked to, on demurrer, for the purpose of testing the sufficiency of the allegations of the complaint. See *Evans* v. *Pettus*, 112 Ark. 572, 166 S. W. 955; *Moore* v. *Exelby*, 170 Ark. 908, 181 S. W. 671. The complaint alleges that the county court of White County made an order annexing certain territory in which the plaintiff owned lands, and that the county court made an order directing that an election be held for the purpose of electing a director of Levee District No. 1 and also to elect an assessor, and that the election was duly held, all of which was shown by an order

of the county court, which was attached and made an exhibit to the complaint. When the recitals of the order of the county court are examined, it will be observed that the court, in making the alleged order of annexation and for the election of a director and an assessor, followed the procedure prescribed by the statute with reference to the formation of new or original districts as regards notice and election of directors and assessors. See §§ 6814-6819 of Crawford & Moses' Digest. While the recitals of the order designate it as a petition for the annexation of territory and a change in boundary lines, these recitals further declare that the petition was presented asking that the boundary be changed and the territory described therein added "for the purpose of constructing and maintaining a levee for the protection of the above described lands, as well as all the lands included in said Little Red River District No. 1, to the end that all said lands shall be protected from overflow."

The recitals of the order of the county court upon which the appellant predicates his alleged right to enjoin the appellees from levying an assessment of benefits on his land, and which recitals must explain and control any allegations of the complaint, really make it uncertain whether the purpose of the county court of White County was simply to lay off and form a new levee district with the same name and including the same territory as that embraced in Little Red River District No. 1 and also the additional territory as that described in the order of the county court, or whether the purpose of the court was to change the boundary lines of the district already existing so as to include therein new territory. However this may be, it is certain that the appellant's lands have been brought into the district under an order of the county court under the same notice and procedure which would have been followed if the county court had been really creating a new levee district instead of merely changing the boundaries of one already existing. Such being the state of the record, the trial court was not

called upon to pass upon the constitutionality of the act of March 20, 1879, as amended by the act of March 1, 1889, as set forth in § 6813 of Crawford & Moses' Digest. Certainly the appellant is not in an attitude to contend that his lands were embraced in the district without notice to him, and that the act of March 1, 1889, is for that reason unconstitutional and void.

In *Ry. Co.* v. *Smith,* 60 Ark. 221-240, 29 S. W. 752-754, Judge BATTLE, speaking for the court, quoted from Judge Cooley on Constitutional Limitations, p. 231, paragraph 2, as follows: "Neither will a court, as a general rule, pass upon a constitutional question, and decide a statute to be invalid, unless a decision upon that very point becomes necessary to the determination of the cause. While courts cannot shun the discussion of constitutional questions when fairly presented, they will not go out of their way to find such topics. They will not seek to draw in such weighty matters collaterally, nor on trivial occasions. It is both proper and more respectful to a coordinate department to discuss constitutional questions only when that is the very *lis mota.* Thus presented and determined, the decision carries a weight with it to which no extrajudicial disquisition is entitled. In any case therefore where a constitutional question is raised, though it may be legitimately presented by the record, yet, if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when consequently a decision upon such question will be unavoidable." Such has been the unvarying practice of this court. See also *Martin* v. *State,* 79 Ark. 236, 96 S. W. 372; *Sturdivant* v. *Tollett,* 84 Ark. 412, 105 S. W. 1073; *Road Imp. Dist. No. 1* v. *Glover,* 86 Ark. 231, 110 S. W. 1031.

2. But learned counsel for the appellant contends that no express authority is contained in the statute, §

6813, for the assessing of benefits against any land that may be added to an existing levee district by a change in the boundary of such district. We cannot concur in this view. The act of March 20, 1879, authorizing the creation of levee districts, provides for a board of three assessors for such districts, whose duty it is, under the statute, to assess the benefits to accrue to the lands *in such districts* by reason of the levees to be constructed and maintained. This language, *"shall assess the value of lands in said district * * * and shall assess the value thereof,"* i. e., the benefit of the work or improvement made, is sufficiently comprehensive to include all the lands that may be embraced in any levee district that may exist as originally formed, and also any lands that may be subsequently added by a change in the boundaries of such district. The Legislature of 1889, in § 1 of the act approved March 1, 1889, after amending the act of 1879 so as to authorize the county court to lay off levee districts or change or order the boundaries of existing levee districts, further provided, in § 2 of the act, "that the said board of assessors shall make an assessment of the cost of said work upon the land situated *in said district benefited by said work,"* etc. The Legislature of 1897 amended § 2 of the act of March 1, 1889, so as to read as follows: "Said board of assessors shall make an assessment upon the cost of said work upon the lands situated in said district benefited by said work and reported at said meeting of landowners," etc. Then follow certain changes in the section not necessary to set out. See §§ 4365, 4367, 4375 of Mansfield's Digest, and 4709 of S. & H. Digest, all brought forward and digested in §§ 6813, 6815, 6823 and 6830 of Crawford & Moses' Digest. When these provisions of our statutes pertaining to levees are considered, it is clear that the assessors of all levee districts are expressly authorized to assess the benefits to accrue to all the lands included in the district by the building and maintaining of the levee. A review of the statutes set forth above convinces us that the Legislature used the words "levee district"

intending that they should be applied to all the lands embraced in such districts, whether as at first formed or created, or as such districts might exist should their boundaries be afterwards changed.

Furthermore, even if the board of assessors were not expressly authorized to assess the benefits to the additional lands brought into the existing levee districts by change of boundaries, they would have such authority by necessary implication, because it is their duty, under § 6823 of C. & M. Digest, *supra,* to assess the value of the benefits to accrue to the lands by reason of the levee. This necessarily includes all the lands that may be embraced in any existing levee district. Any other construction would cast an unjust and discriminatory burden upon some of the lands in the district and defeat the purpose of the law in the creation of such improvements.

In *West* v. *Cotton Belt District No. 1,* 116 Ark. 538, 173 S. W. 403 (a levee district case) we held: "In the construction of statutes governing improvement districts, the grant of powers by the statute includes the incidental powers reasonably proper and necessary for carrying into execution the powers specifically granted." That doctrine applies here.

The decree is correct. Let it be affirmed.